## Commonwealth v. Wrye

*John A. Harris,* for Commonwealth.

*John R. Miller* and *Miller, Kistler & Lee,* for defendant.

CAMPBELL, P. J., September 27, 1963.—Defendant was charged with driving his tractor-trailer truck at a speed of 53 miles per hour on Highway Route 220 in Boggs Township, Centre County, Pa., when the applicable speed for his commercial vehicle was 40 miles per hour. Defendant waived a preliminary hearing and the matter was heard by this court on January 17, 1963. Defendant raised several legal questions at the time of the hearing and we indicated that we would hear the case on the merits and if defendant was found guilty, we would dispose of the same on a motion in arrest of judgment. Defendant was found guilty and a fine of $10 and costs imposed. Defendant then filed a motion in arrest of judgment raising four specific questions as follows:

1. The speed of defendant was timed by means of radar by only one officer and not by "officers" as required by section 1002 (d) (1) of The Vehicle Code of April 29, 1959, P. L. 58.

2. The evidence disclosed that the signs on the State highway which were erected stated "radar enforced" and that such signs were in violation of the act which requires that official warning signs must be erected indicating that radar is in operation.

3. That the radar timing device must be located on the highway right of way.

4. That the speed of a vehicle must be timed for a distance of at least one quarter of a mile even though radar is used to detect the rate of speed.

We shall not go into a complete explanation of the operation of the radar equipment. We are concerned with a limited number of facts about which there is little, if any, dispute. The speed of defendant was timed by only one officer who was seated in the police vehicle with the radar timing device in front of him. There were no other officers in the vehicle. The interceptor car was stationed a few feet away. Corporal Ott, a State police officer, was the only officer who timed defendant. The highway was marked with signs reading "radar enforced", spaced at the customary intervals. The police car containing the radar timing device was located off of the main traveled portion of the highway and there was a conflict of testimony as to whether or not it was within the ordained right of way of the highway or beyond the limits thereof. The police officer testified that the timing vehicle was five to eight feet from the edge of the concrete paved portion of the road. We find that the police vehicle, although not on the traveled portion of the highway, was actually on the ordained right of way thereof. Regardless of this, we

believe this finding to be immaterial. It is clear that the police vehicle was in close proximity to the paved portion of the highway so that there was no interference with the effectiveness of the radar equipment in the determination of speed of motor vehicles on the highway.

Subsequent to the filing of the motion in arrest of judgment, the case of Commonwealth v. Bartley was decided by the Supreme Court of Pennsylvania, 411 Pa. 286. This case squarely holds that when speed is timed on any State highway by State police through the use of radar that it is not required that the radar measurement of speed shall be for a distance of ¼ of a mile. Defendant has therefore withdrawn this legal objection.

Section 1002 (d) (1) of The Vehicle Code, as amended by the Act of April 28, 1961, P. L. 108, reads as follows:

"The rate of speed of any vehicle may be timed on any State highway, including the Pennsylvania Turnpike System, by officers of the Pennsylvania State Police through the use of radiomicrowaves, commonly referred to as electronic speed meters or radar."

It is the contention of defendant that, since the act of assembly uses the plural "officers", this requires two or more officers to be located in the police vehicle with the radar equipment, and that therefore no conviction can be had unless there were two officers in the car operating the radar equipment and reading the speed dial. With this contention we cannot agree for several reasons.

First, we believe that if the legislature had so intended they would have specifically spelled out the fact that two officers were required. Immediately following the above-quoted section of the code, the act states that "no conviction shall be had upon evidence obtained

through the use of radar apparatus unless" and then follows four specific requirements. The requirement of two police officers to handle the radar equipment is not so mentioned. We think its absence is indicative of the fact that the legislature did not intend that the equipment must at all times be operated by two police officers. This argument becomes more persuasive when we look at section 1002 (d) (1) of the code in which it is provided that two peace officers must perform the act of timing speed when pursuing a vehicle for $\frac{1}{4}$ of a mile. We believe if the legislature intended that two police officers were required before a conviction could be had in this section, they would have so stated.

Secondly, the word "officers" is used on a number of occasions in The Vehicle Code wherein it is quite clear that the act does not require two or more officers to be present. For example, section 903 states that all police officers shall have the power to arrest on view, section 1103 (a) states that local authorities shall have the power to provide for regulation of traffic by means of police officers; section 1204 provides that peace officers when in uniform and displaying badge or other sign of authority may arrest upon view, etc.; section 1222 states that peace officers shall have authority to remove abandoned or wrecked vehicles. We do not believe that when the plural "officers" is used in these sections that it requires two or more officers to act. The radar section is a portion of The Vehicle Code and we feel the logical interpretation would be that the word officers would indicate any officer of the Pennsylvania State Police.

Third, the Statutory Construction Act of May 28, 1937, P. L. 1019, article III, sec. 32, 46 PS §532, provides that the singular shall include the plural and the plural the singular. We fully realize that this is a penal statute and should be strictly construed but when the entire Vehicle Code is considered as we think it should be, we can come to no other conclusion than that the

word officers refers to any officer of the Pennsylvania State Police who might be assigned to the radar detail.

The second legal question raised by defendant is that the signs which were erected did not comply with the act of assembly. They merely stated "radar enforced". It is the contention of defendant that they should indicate that radar is in operation. Section 1002 (d.1) (1) reads as follows:

"No conviction shall be had upon evidence obtained through the use of radar apparatus unless—

"(iii) official warning signs have been erected on the highway by the proper authority indicating that radar is in operation; . . ."

At first blush, it would seem that the signs which were erected were not strictly in accordance with the act of assembly. To a layman, radar enforced has a different meaning than radar is in operation. There is no question here about the posting of signs or the spacing thereof. As we view the position of defendant, his only complaint is as to the contents of the signs. The court is being asked to interpret the act so that the sign would inform a motorist that within a short distance ahead a radar unit was at that moment in operation. We gather that they would liken it to a highway crew at work where large signs are set on the berm of the road indicating "men working". We feel that this is a strained construction of the act for several reasons.

We believe the legislature intended that signs were to be erected on all the highways of the Commonwealth upon which the radar speed detection devices were intended to be used. The word "erected" is used, indicating substantial construction or permanent. The legislature delegated to the secretary of highways, section 1002-(d.1) (3), the authority to establish by rule or regulation the size, color and type of warning signs to be erected on the highway where radar is in use and to

designate the intervals at which such warning signs are erected. Since signs are to be erected at intervals, we believe that to mean that they should be erected on all highways on which radar speed detection devices are to be used. It is quite obvious that radar units cannot be operated at the same time on each mile of State highways.

The entire radar act would be useless and ineffective if police were required to post the exact time and place where radar was then and there operating. The uncertainty and suspense of when and where one will be timed is a real deterrent to speed.

The act itself does not specify the wording of the sign. This has been delegated to the Secretary of Highways. The sign need only *indicate* that radar is in operation. Indicate means to point to or to give direction to the mind. It would appear that by the use of the sign which the State has erected a traveler is warned that somewhere and at some place on the highway system he is traveling, radar is being used or in operation to detect speed violators. We believe this to be a logical and warranted interpretation of the act.

The final argument of defendant we believe to be without merit. We can come to no other conclusion than that the act which requires the rate of speed to be timed on the highway refers to the vehicle being timed, and not the radar unit doing the timing. So long as it can be shown that the radar unit can operate safely and accurately, its location is immaterial.

For these reasons we enter the following order:

And now, September 27, 1963, the motion in arrest of judgment is refused and defendant is directed to pay the fine and costs previously imposed.

And now, September 27, 1963, an exception is noted and bill sealed for defendant.